UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ROY S. BUNDY,

                              Plaintiff,                    **REPORT**
                                                           **and**
                                                           **RECOMMENDATION**
        v.
                                                           **09-CV-702  A(F)**

MICHAEL J. ASTRUE,
Commissioner of Social Security,


                              Defendant.

_____

APPEARANCES:          LAW OFFICES OF KENNETH R. HILLER
                      Attorneys for Plaintiff
                      AMANDA R. JORDAN, of Counsel
                      6000 North Bailey Avenue,
                      Suite 1A
                      Amherst, New York 14226

                      WILLIAM J. HOCHUL, JR.
                      United States Attorney
                      Attorney for Defendant
                      KEVIN D. ROBINSON
                      Assistant United States Attorney, of Counsel
                      Federal Centre
                      138 Delaware Avenue
                      Buffalo, New York 14202

## JURISDICTION

This action was referred to the undersigned by Honorable Richard J. Arcara on

October 15, 2009.  The matter is presently before the court on a motion for judgment on

the pleadings filed on March 12, 2010, by Defendant (Doc. No. 8), and on May 13,

2010, by Plaintiff (Doc. No. 10).

## BACKGROUND

Plaintiff Roy S. Bundy ("Plaintiff"), seeks review of Defendant's decision denying

him Social Security Disability Insurance benefits ("SSDI"), and Supplemental Security

Income ("SSI") (together, "disability benefits") under, respectively, Titles II and XVI of the Social Security Act ("the Act"). In denying Plaintiff's application for disability benefits, Defendant determined Plaintiff had the severe impairments of mild degenerative changes of the left knee and chondromalacia patella (damage to cartilage under kneecap), Chron's disease, gastroesophageal reflux disease ("GERD") with Barrett's esophagitis, hiatal hernia, intestinal metaplasia (cell changes), chronic fatigue syndrome, vitamin B-12 deficiency, anemia, hypertension, chronic headaches, and low intellectual functioning. (R.19-20). Defendant further determined Plaintiff's impairments of mitral valve prolapse with mild regurgitation and mild tricuspid regurgitation, costochondritis, erythematous bladder, cystitis and urinary frequency, and sporadic adjustment disorder with depression were not severe, and that Plaintiff was not disabled at any time through the date of the application until the date of the hearing of the Administrative Law Judge on April 8, 2008.

## PROCEDURAL HISTORY

Plaintiff filed applications for disability benefits on February 14, 2006 (R. 66-80); that were initially denied by Defendant on May 18, 2006. (R. 39-42). Pursuant to Plaintiff's request, filed June 6, 2006 (R. 47), a hearing was held before an Administrative Law Judge ("the ALJ") on April 8, 2008, in Buffalo, New York. (R. 734-75). The Plaintiff, represented by Jennifer Desmond, Esq., testified and appeared at the hearing. Testimony was also given by vocational expert Jay A. Steinbrenner ("Steinbrenner") ("the VE"). (R. 770-72). The ALJ's decision denying the Defendant's claim was rendered on November 20, 2008. (R. 15-37). On December 19, 2008,

Plaintiff requested review of the ALJ's decision by the Appeals Council. (R. 11). The ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review on July 8, 2009. (R. 5-7). This action followed on August 6, 2009, with Plaintiff alleging the ALJ erred by failing to consider him disabled as of February 14, 2006. (Doc. No. 1).

Following the filing of Defendant's answer on October 13, 2009, including the record of the administrative proceedings (Doc. No. 3), on March 12, 2010, Defendant filed the instant motion for judgment on the pleadings ("Defendant's motion"), together with a memorandum of law (Doc. No. 9) ("Defendant's Memorandum"). Plaintiff filed a reply response (Doc. 10) ("Plaintiff's Reply") on May 13, 2010, accompanied by a supporting memorandum of law (Doc. 10-1) ("Plaintiff's Memorandum"). Oral argument was deemed unnecessary.

Based on the following, Plaintiff's motion should be DENIED; Defendant's motion should be GRANTED. The Clerk of the Court should be directed to close the file.

### <u>FACTS</u>[1]

Plaintiff, was born on December 28, 1970, has a two year college degree, and worked as an auto technician from July 2005 until February 13, 2006, the alleged onset date of disability. (R. 107). At the date of the hearing on April 8, 2008, Plaintiff was married, and lived with his wife. (R. 66). Plaintiff alleges he is unable to work because of Crohn's disease, Barrett's esophagitis, chronic fatigue syndrome, mitral valve prolapse, hypertension, vitamin B12 deficiency, vertigo, a sleep disorder, headaches, and

---

[1] Taken from the pleadings and the administrative record.

depression. (R. 19).

On October 14, 2004, Dorothy L. Trubish, M.D. ("Dr. Trubish") performed a computerized tomography test ("CT scan") of Plaintiff's abdomen and pelvis that showed mild thickening of Plaintiff's distal sigmoid colon (section of the colon before the rectum begins), and a colonoscopy test of Plaintiff's large intestine and colon that showed patchy erythemata (redness) of Plaintiff's terminal ileum (most distal part of the small intestine), patchy erythema of Plaintiff's left colon, ileitis (inflammation of a portion of the small intestine), and mild non-specific chronic colitis (inflammation) of the right side of Plaintiff's colon. (R. 257). Dr. Trubish noted Plaintiff reported persistent lower back pain, right lower quadrant pain, significant perirectal discomfort, and that Plaintiff's rectal examination revealed tenderness of the left and right perirectal regions, and a diffusely tender abdomen. (R. 256). Dr. Trubish noted the Asacol medication prescribed to treat Plaintiff's presumed Crohn's ileocolitis had not resulted in substantial improvement of Plaintiff's symptoms, prescribed Cipro and Flagyl (antibiotics), and diagnosed Plaintiff with Crohn's disease. *Id.* On January 19, 2005, Plaintiff returned to Dr. Trubish with complaints of persistent day and nighttime diarrhea, right lower quadrant pain, and low energy, leading Dr. Trubish to prescribe Entocort ( a steroid used to treat Crohn's disease). (R. 256).

A CT scan of Plaintiff's abdomen by Alan Tolchin, M.D. ("Dr. Tolchin") on February 21, 2005, showed Plaintiff with a possible bladder carcinoma, that led Dr. Tolchin to perform a cystoscopy test on Plaintiff on March 7, 2005, that was negative for malignancy. (R. 564). Dr. Tolchin diagnosed Plaintiff with dysuria (abnormal finding in the bladder). *Id.* On December 13, 2005, Maya Devi Srivastava, M.D. ("Dr. Srivastava")

4

evaluated Plaintiff with a diffusely tender abdomen and pelvic region consistent with the cystoscopy procedure performed by Dr. Tolchin on March 7, 2005. (R. 477).

On January 31, 2006, Plaintiff visited Dr. Srivastava, who noted Plaintiff reported difficulty with speaking and swallowing, severe abdominal pain in the super pubic area, difficulty sleeping, vertigo, weight gain, and "worse" esophageal symptoms. (R. 479). Upon examination, Dr. Srivastava noted Plaintiff's abdomen was extended with right lower quadrant and epigastric tenderness, discontinued Plaintiff's Periactin (appetite stimulant) because Plaintiff had sufficiently increased his weight, opined Plaintiff's Crohn's disease was not in remission, and that Plaintiff's severe reflux and Barrett's esophagitis would require surgery. (R. 480).

On February 14, 2006, during the relevant period of disability, Plaintiff visited primary care physician Beth Wutz, M.D. ("Dr. Wutz"), with complaints of rectal bleeding, chest congestion, and post nasal drip. (R. 318).

 On March 7, 2006, Plaintiff underwent an esophageal manometry procedure (test to measure pressure and swallow movement of esophagus) by Dr. Srivastava that showed normal results. (R. 474-76). On March 14, 2006, Stephan M. Schatz, M.D. ("Dr. Schatz") performed a flexible cystourethroscopy procedure (test to view inside the bladder and urethra) on Plaintiff that showed small bladder diverticula (pouches in the bladder wall). (R. 365).

Dr. Srivastava completed a disability determination report on March 15, 2006, and assessed Plaintiff with severe abdominal pain, vomiting, cramping, gastrointestinal bleeding, weakness, fatigue, and arthritis of the knees, and opined Plaintiff could not lift more than 50 pounds, stand or walk more than two hours each day, or sit more than 6

hours each day, and further opined Plaintiff was unable to work because of severe fatigue related to Crohn's disease and arthritis. (R. 409-411). A psychological consultation conducted by Thomas Ryan, Phd. ("Dr. Ryan") on April 8, 2006, showed Plaintiff with "stress-related problems . . . not significant enough to interfere with [Plaintiff's] ability to function on daily basis," and the ability to maintain a regular schedule "unless [Plaintiff's] physical health interferes." (R. 383). A consultative medical examination by John Schwab, D.O. ("Dr. Schwab") on April 8, 2006, showed Plaintiff with no physical restrictions. (R. 388).

Plaintiff sought treatment from Dr. Srivastava on April 11, 2006, for severe shortness of breath, coughing, and right-sided abdominal pain. (R. 470). Dr. Srivastava opined Plaintiff's Crohn's disease was "in adequate control," that Plaintiff's GERD was not under control even with the most aggressive PPI (proton pump inhibitor) treatment possible, and prescribed Raglan to treat Plaintiff's reflux. *Id.*

Plaintiff visited Reena Thomas, M.D. ("Dr. Thomas") for a neurological consultation on April 20, 2006, with complaints of chronic headaches and difficulty sleeping. (R. 418). Dr. Thomas prescribed Elavil (an antidepressant), and Axert (an absorptive agent), and ordered a magnetic resonance imaging test ("MRI"), later performed on April 24, 2006 by Vernice E. Bates, M.D. ("Dr. Bates") that showed normal results. (R. 410). Dr. Thomas evaluated Plaintiff on May 1, 2006, noted Plaintiff's April 24, 2006, MRI results were normal (R. 420), and that Plaintiff reported his headaches were "much better." (R. 417). A residual functional capacity assessment performed on May 15, 2006, by R. E. Hill, Phd. ("Dr. Hill") showed Plaintiff exhibited no restriction to activities of daily living, or difficulty in maintaining social functioning, and

mild restriction to maintaining concentration, persistence, or pace. (R. 404). A follow-up visit to Dr. Thomas on June 28, 2006, showed Plaintiff was "doing well." (R. 416).

Upon examination on June 13, 2006, Dr. Srivastava noted Plaintiff complained of abdominal cramping and blood in his stool, and evaluated Plaintiff with an "abnormal" abdominal examination that included increased bowel sounds in Plaintiff's right lower quadrant, and left lower quadrant tenderness. (R. 468). A follow-up visit to Dr. Srivastava on August 10, 2006, showed Plaintiff with a distended abdomen. (R. 453). Dr. Srivastava opined Plaintiff's Crohn's disease appeared "mildy active," and that Plaintiff's gastroesophageal reflux disease had remained uncontrolled with aggressive treatment. (R. 453). On August 17, 2006, Dr. Srivastava noted Plaintiff continued to experience severe reflux with regurgitation at night that resulted in choking and restricted breathing despite aggressive drug therapy, and recommended surgical consultation with Michel Gagner, M.D. ("Dr. Gagner") for laparoscopic Nissen fundoplication surgery (shortening of the esophagus). (R. 408).

On August 22, 2006, Shabnam M. Jaffer, M.D. ("Dr. Jaffer") performed an endoscopy procedure on Plaintiff, and diagnosed Plaintiff with acute cardioesophagitis, a 5 cm hiatal hernia, and mildly active nonspecific duodenitis with focal erosion. (R. 502-3).

Plaintiff visited Dr. Srivastava on September 11, 2006, with complaints of shortness of breath, left sided pain, and a feeling like he was "in a daze." (R. 451-52). Upon examination, Dr. Srivastava opined Plaintiff's Crohn's disease was in remission, and that Plaintiff's reflux was "doing well." *Id*. A follow-up examination with Mary Kay Betz ("PA Betz") , Physician Assistant to Dr. Thomas, on September 27, 2006, showed

Plaintiff experienced several headaches per week, and ten "truly disabling" headaches, that led PA Betz to increase Plaintiff's Elavil dose, and prescribe Naproxen (anti-inflammatory pain medication), and headache vitamins. (R. 415).

A physical examination conducted by Dr. Srivastava on October 10, 2006, was normal. (R. 449). On October 18, 2006, Dr. Srivastava noted Plaintiff's Nissen fundoplication surgery[2] was successful, but that Plaintiff continued to complain of shortness of breath and left-sided pain. (R. 451). A chest X-ray on November 24, 2006, by John Reiser, M.D. ("Dr. Reiser") was normal. (R. 598). An echocardiogram stress test conducted by George E. Matthews, M.D. ("Dr. Matthews") on November 27, 2006, showed Plaintiff with mild mitral and tricuspid regurgitation. (R. 601).

On January 17, 2007, Katherine O'Donnell, M.D. ("Dr. O'Donnell") examined Plaintiff for complaints of pelvic pain, and ordered a pelvic CT scan that showed normal results. (R. 540-41). A blood test on February 21, 2007, showed Plaintiff with a hemoglobin level of 14.9. (R. 542).

A follow-up evaluation of Plaintiff's knee by Jody L. Snyder, M.D. ("Dr. Snyder") on June 28, 2007, showed patellar instability, and led Dr. Snyder to order an orthotic device to stabilize Plaintiff's knee. (R. 654). Plaintiff previously received three Synvisc (knee lubricating fluid) injections in his left knee on February 2, 2006 (R. 659), March 23, 2006 (R. 658), and March 30, 2006 (R. 657).

On July 17, 2007, Plaintiff was evaluated by Robert Smolinski, M.D. ("Dr. Smolinski") for left knee pain, who, after an MRI test on July 19, 2007, conducted by

---

[2] The surgery date is not clear from the record.

Anthony G. Notino, M.D. ("Dr. Notino"), diagnosed Plaintiff with degenerative fraying of the free edge of the posterior horn of the medial meniscus without a discrete tear, and blunting of the posterior horn/body junction of the medial meniscus with prominent fraying. (R. 650). On October 15, 2007, Physician Assistant Sonalee Patel, ("PA Patel"), examined Plaintiff and noted Plaintiff was "very tender" to abdominal palpation. (R. 587). A Sestamibi stress test (exercise stress test) by Najat A. Turaif, M.D. ("Dr. Turaif") on October 29, 2007, showed normal results. (R. 586).

On September 18, 2007, Plaintiff visited Dr. Srivastava with complaints of increased abdominal pain and diarrhea, where, upon examination, Dr. Srivastava noted Plaintiff's abdomen was abnormal with fullness and distention, and the presence of a colonic compaction. (R. 546).

On October 2, 2007, Plaintiff presented to St. Joseph Hospital's emergency room, in Cheektowaga, New York, with chest pain and shortness of breath. (R. 515). A chest CT scan showed normal results. *Id*. On November 24, 2007, Plaintiff again sought treatment from St. Joseph Hospital emergency room, complaining of nausea, vomiting, and diarrhea, underwent chest and abdominal X-rays that showed normal results, and was diagnosed with viral gastroenteritis. (R. 524).

A blood test on December 4, 2007, showed Plaintiff with a hemoglobin level of 7.8[3], and serum albumin level of 4.0., leading Dr. Srivastava to note Plaintiff's hemoglobin level represented a "marked decrease" from Plaintiff's historically normal

---

[3] In general terms, anemia is considered mild when hemoglobin levels are 10 g/dL (grams per deciliter) and higher, moderate when the hemoglobin is 8.0-9.9 g/dL, severe when the hemoglobin is 6.5-7.9 g/dL, and life-threatening when it is 6.5 g/dL or less. *See* 9-60 Attorneys' Textbook of Medicine, General Diagnostic Considerations § 60.20.

levels. (R. 544). A CT scan of Plaintiff's abdomen and pelvis on December 5, 2007, showed Plaintiff with an increase in the caliber of his sigmoid colon, and a mildly distended bladder. (R. 643). An examination on December 10, 2007, by Dr. Srivastava, showed Plaintiff with right lower quadrant tenderness and shortness of breath, leading Dr. Srivastava to order an endoscopy test to rule out gastrointestinal hemorrhage, and opine she was not convinced Plaintiff had Crohn's disease because of Plaintiff's colonic impaction and constipation. (R. 545). The endoscopy conducted on December 12, 2007, showed Plaintiff with reflux esophagitis and mild gastritis. (R. 536). A colonoscopy on December 28, 2007, revealed normal results. (R. 535). Dr. Srivastava opined Plaintiff's Crohn's disease was "in remission" on January 10, 2007 (R. 551), and January 8, 2008 (R. 435), "in good control" on December 13, 2005 (R. 477), and May 22, 2007 (R. 549), and further opined he was not convinced of Plaintiff's diagnosis of Crohn's disease on December 10, 2007 (R. 544).

## DISCUSSION

**1.      Disability Determination Under the Social Security Act**

An individual is entitled to disability insurance benefits under the Social Security Act if the individual is unable

> to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or
> can be expected to last for a continuous period of not less
> than 12 months. . . .  An individual shall be determined to be
> under a disability only if his physical or mental impairment or
> impairments are of such severity that he is not only unable
> to do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of

> substantial gainful work which exists in the national
> economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves he or she is severely impaired and unable to perform any past relevant work, the burden shifts to the Commissioner to prove there is alternative employment in the national economy suitable to the claimant. *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir. 1980).

## A.    <u>Standard and Scope of Judicial Review</u>

The standard of review for courts reviewing administrative findings regarding disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law judge's findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires enough evidence that a reasonable person would "accept as adequate to support a conclusion." *Pollard v. Halter,* 377 F.3d 183, 188 (2d Cir. 2004) *citing Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

While evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight. *Scherler v. Sullivan*, 3 F.3d 563, 567

(2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence. 42 U.S.C. §§ 405(g) and 1383(c)(3); *Dumas v. Schweiker, supra*, at 1550. "Congress has instructed . . . that the factual findings of the Secretary,[4] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period of which benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits. *Id*. The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Absent an impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[5]  42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920.  *See also Cosme v. Bowen*, 1986 WL 12118, at * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits.  *Id.*  Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment.  20 C.F.R. §§ 404.1520(f), 416.920(f). *See also Berry v. Schweiker, supra*, at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [his] past work").  If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits. *Id.* The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment.  *Berry, supra*, at 467.  In reviewing the administrative finding, the court must follow the five-step analysis to determine if there was substantial evidence on which the Commissioner

---

[5] The applicant must also meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period.  20 C.F.R. §§ 404.1509 and 416.909.

based the decision.  *Richardson v. Perales*, 402 U.S. 389, 410 (1971).

**B.**     **Substantial Gainful Activity**

The first inquiry is whether the applicant engaged in substantial gainful activity. "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties" done for pay or profit.  20 C.F.R. § 404.1510(a)(b). Substantial work activity includes work activity that is done on a part-time basis even if it includes less responsibility or pay than work previously performed.  20 C.F.R. § 404.1572(a). Earnings may also determine engagement in substantial gainful activity. 20 C.F.R. § 404.1574.  In this case, the ALJ concluded Plaintiff has not engaged in substantial activity since February 13, 2006, the alleged onset date. (R. 19). Plaintiff does not contest this finding.

**C.**     **Severe Physical or Mental Impairment**

The second step of the analysis requires a determination whether Plaintiff has a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 404.1509, and significantly limits the Plaintiff's ability to do "basic work activities."  The Act defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b).

The ALJ found Plaintiff had severe impairments of mild degenerative changes of the left knee and chondromalacia patella, a history of Crohn's disease, GERD with Barrett's esophagitis, hiatal hernia with intestinal metaplasia, chronic fatigue syndrome, viatmin B12 deficiency and anemia, hypertension, chronic headaches, and low intellectual functioning, but that Plaintiff's impairments of mitral valve prolapse, mild tricuspid regurgitation, costochondritis, erythematous bladder, cystitis and urinary frequency, and sporadic adjustment disorder with depressed mood were not severe. (R. 19-20). Plaintiff does not contest this finding, apart from the ALJ's finding Plaintiff's adjustment disorder with depressed mood, and history of a repaired inguinal hernia are not severe. (Doc. 1).

**D.**     **Listing of Impairments, Appendix 1**

The third step is to determine whether a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments"). If the impairments are listed in the Appendix, and the duration requirement is satisfied, the impairment or impairments are considered severe enough to prevent the claimant from performing any gainful activity and the claimant is considered disabled. 20 C.F.R. §§ 404.1525(a), 416.925(a); *Melville v. Apfel*, 198 F.3d. 45, 51 (2d Cir. 1999) ("if the claimant's impairment is equivalent to one of the listed impairments, the claimant is considered disabled").

The relevant listing of impairments in this case includes 20 C.F.R. Pt. 404, Subt. P, Appendix 1, § 1.02 (major dysfunction of a joint(s) due to any cause) (§ 1.02), 20 C.F.R. Pt. 404, Subt. P, Appendix 1, § 1.04 (disorders of the spine) (§ 1.04), 20 C.F.R.

Pt. 404, Subt. P, Appendix 1, § 4.02 (chronic heart failure) (§ 4.02), 20 C.F.R. Pt. 404,

Subt. P, Appendix 1, § 4.04 (ischemic heart disease) (§ 4.04), 20 C.F.R. Pt. 404, Subt.

P, Appendix 1, § 5.06 (inflammatory bowel disease) (§ 5.06), and 20 C.F.R. Pt. 404,

Subt. P, Appendix 1, § 12.02 (organic mental disorders) (§ 12.02).

Relevant to the instant case, disability under §1.02 is characterized by

> gross anatomical deformity (e.g. subluxation, contracture, bony or fibrous
> ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of
> motion or other abnormal motion of the affected joint(s), and findings on
> appropriate medically acceptable imaging of joint space narrowing, bony
> destruction, or ankylosis of the affected joint(s). With: (A) involvement of one
> major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in
> inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 1.00B2b(1).

Under § 1.04, a person may be disabled based on disorders of the spine if

medical evidence demonstrates herniated nucleus pulposus, spinal arachnoiditis,

spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral

fracture, resulting in compromise of a nerve root or the spinal cord.

20 C.F.R. Pt. 404, Subpt. P, Appendix 1, §1.04. Here, the ALJ, as required, evaluated

Plaintiff's impairments under 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526,

directed to consideration of the Listing of Impairments, and determined Plaintiff's

impairments were not accompanied by the required clinical signs and diagnostic

findings under the Act. (R. 22). Substantial evidence in the record supports this finding.

Specifically, the MRI by Dr. Notino on July 19, 2007 (R. 650), showed Plaintiff had

degenerative fraying of the posterior medial meniscus, and blunting of the junction of

Plaintiff's medial meniscus, additional X-rays on January 31, 2006 (R. 641), and July

24, 2006 (R. 612), showed no abnormalities, and this, without more, does not rise to the

criteria required under either § 1.02 (major dysfunction of joint(s) due to any cause), or § 1.04 (disorders of the spine), and supports the ALJ's finding substantial evidence in the record showed Plaintiff's impairments did not meet the criteria under either § 1.02 or § 1.04 of the Listing of Impairments.

The ALJ's finding Plaintiff did not meet the criteria under § 4.02 (chronic heart failure), or § 4.04 (ischemic heart disease) of the Listing of Impairments are also supported by substantial evidence in the record. Specifically, a chest X-ray on Plaintiff on November 24, 2006 (R. 598), was normal; a stress echocardiogram conducted on Plaintiff on November 27, 2006 (R. 599-601), showed only "mild" mitral and tricuspid regurgitation, and a Sestamibi stress test on October 29, 2007, revealed no evidence of significant ischemia. (R. 586).

Also supported by substantial evidence in the record is the ALJ's finding that Plaintiff's symptoms, documented by endoscopy, biopsy, appropriate medically acceptable imaging, or operative findings, did not show substantial evidence of inflammatory bowel disease under § 5.06. In particular, substantial medical evidence in the record did not show obstruction of stenotic areas (not adhesions) in the small intestine or colon requiring hospitalization for intestinal decompression or surgery, occurring on at least two occasions at least 60 days apart within a 60 day consecutive period as required under 20 C.F.R. Pt. 404, Subt. P, Appendix 1, § 5.06. In particular, on September 11, 2006, Dr. Srivastava opined Plaintiff had no bleeding, abdominal pain, diarrhea, or other active signs of Crohn's disease (R. 451), opined the small bowel procedure during Plaintiff's laparoscopic Nissen fundoplication surgery showed "no evidence of [Crohn's] disease," reported she was not convinced that Plaintiff's Crohn's

17

diagnosis was accurate (R. 544), and, upon examination on January 8, 2008, opined Plaintiff's Crohn's disease was "in remission" (R. 435 ). Without more, such evidence does not rise to the required level of criteria required under § 5.06A as the ALJ correctly determined.

Substantial evidence in the record also establishes Plaintiff did not meet two of the required criteria under § 5.06B, including; (1) anemia with hemoglobin of less than 10.0 g/dL (§ 5.06 B1) ; (2) serum albumin of 3.0 g/dL or less, present on at least two evaluations at least 60 days apart (§ 5.06B2); (3) clinically documented tender abdominal mass palpable on physical examination not controlled by medication on at least two evaluations at least 60 days apart (§ 5.06B3); (4) perineal disease with a draining abcess or fistula not completely controlled by medication present on at least two evaluations at least 60 days apart ( § 5.06B4); (5) involuntary weight loss of at least 10 percent from baseline (Plaintiff's baseline weight on October 13, 2004, was 203 pounds. Plaintiff's weight remained within 10 percent of the baseline of 203 pounds (201 pounds (R. 261); 212 pounds (R. 390); 219 pounds (R. 409); 203 pounds (R. 449); 220 pounds (R. 479), 217 pounds (R. 586); 214 pounds (R. 593); and 216 pounds (R. 611). Additionally, substantial evidence in the record supports the ALJ's find that Plaintiff, did not, as required under § 5.06B6, require supplemental daily enteral nutrition via a gastrostomy or daily parenteral nutrition via a central venous catheter. Therefore, substantial evidence in the record supports the ALJ properly found Plaintiff not disabled under 20 C.F.R. Pt. 404 Subt. P, Appendix 1, § 5.06(A)(B), inflammatory bowel disease.

Although substantial evidence in the record indicates Plaintiff was prescribed

Wellbutrin to treat depression, and attempted suicide in April 2005, Plaintiff's depression did not meet the criteria under 20 C.F.R. Pt. 404, Subt. P, Appendix 1, § 12.02 (organic mental disorders) (§ 12.02). In particular, although Plaintiff visited Dr. Srivastava on March 15, 2006 (R. 472), April 11, 2006 (R. 470), June 13, 2006 (R. 468), August 10, 2006 (R. 453), October 10, 2006 (R. 449), January 10, 2007 (R. 551), September 18, 2007 (R. 546), yet Dr. Srivastava opined only on October 18, 2006 (R. 451-52), that Plaintiff complained of "being in a daze" and Plaintiff's depression medication may need adjustment. Plaintiff's own testimony regarding his depression is that it caused crying spells, and Plaintiff felt "down on himself [because he not able to] do anything anymore," that he had two to three days each month when he would not leave the house. (R. 768). This, however, does not meet the criteria of § 12.02, which requires a marked restriction of activities of daily living, maintaining social functioning, concentration, persistence, or pace, or repeated episodes of decompensation.

Nor, as Plaintiff argues, did the ALJ fail to consider the combined effects of Plaintiff's multiple impairments on Plaintiff's ability to engage in substantial gainful activity. (Doc. 10-1). Notwithstanding Plaintiff's contention that the ALJ failed to consider Plaintiff's combination of impairments, the ALJ found that "[t]he claimant's impairments do not meet or equal in severity the criteria specified for any impairment identified in the Listing of Impairments at Appendix 1, Subpart P, of 20 C.F.R. Part 404 (20 C.F.R. §§ 404.1520(d) and 404.1525" (R. 22). Specifically, in reaching this conclusion, the ALJ correctly referenced Section 404.1525(c)(5) which directly incorporates the combination of impairments under § 404.1526(b)(3):

[i]f you have a combination of impairments, no one of which meets a listing (see

§ 404.1525(c)(3)), we will compare your findings with those for closely analogous listed impairments.

The court finds substantial evidence supports this finding. Specifically, Dr. Srivastava opined on March 15, 2006, Plaintiff was disabled as a result of severe fatigue related to Crohn's disease and arthritis (R. 409-11), Dr. Srivastava later opined Plaintiff showed no active Crohn's disease on September 11, 2006 (R. 451), diagnosed Plaintiff with a colonic impaction on September 18, 2007 (R. 546), and opined, on December 10, 2007, that after Plaintiff's Nissen fundoplication surgery found no evidence of the disease, she was not convinced Plaintiff was properly diagnosed with Crohn's disease. (R. 545). Although Dr. Srivastava found, on March 15, 2006 (R. 411), that Plaintiff was disabled by severe fatigue attributed to Crohn's disease and arthritis, Dr. Srivastava's later opinion that Plaintiff never had Crohn's disease, renders her opinion on March 15, 2006 inoperative as the ALJ correctly determined. (R. 33). Additionally, Dr. Srivastava never opined that Plaintiff was disabled based on any impairment, either singly or in combination. *See*, 20 C.F.R. § 404.1523*; Koseck v. Sec'y of Health and Human Servs.*, 865 F. Supp. 1000, 1010 (W.D.N.Y. 1994) (holding disability determinations require review of claimant's combined impairments). Further, the ALJ also found, correctly, that no other evidence in the record supports a finding Plaintiff's arthritis is so severe as to be disabling. (R. 31-32). Thus, substantial evidence in the record supports a finding that the ALJ properly considered the combined effects of Plaintiff's combination of impairments on Plaintiff's ability to engage in substantial gainful activity. However, because the decision is before this court for a report and recommendation, the court proceeds to the next step of the inquiry.

**E.    "Residual Functional Capacity" to Perform Past Work**

The fourth inquiry in the five-step analysis is whether the applicant has the "residual functional capacity" to perform past relevant work. "Residual functional capacity" is defined as the most work a claimant can still do despite limitations from an impairment and/or its related symptoms. 20 C.F.R. § 416.945(a). If a claimant's residual functional capacity is insufficient to allow the performance of past relevant work, the ALJ must assess the claimant's ability to adjust to any other work. 20 C.F.R. § 416.960(c). Here, the ALJ found Plaintiff retained the residual functional capacity to "lift, carry, and push/pull with the upper extremities up to 50 pounds occasionally and 25 pounds frequently; sit for two hours at a time and about six hours total in an eight-hour workday, with normal breaks; stand and walk for about six hours total in an eight-hour workday; with minimal breaks; occasionally climb, balance, stoop, kneel, crouch and crawl; but [Plaintiff] should avoid repetitive operation of foot controls with the left lower extremity . . . [and was] precluded from performing complex highly skilled work." (R. 22).

The ALJ further opined Plaintiff's combination of exertional and non exertional limitations did not significantly reduce the occupational base of sedentary work and that Plaintiff was not disabled (R. 36), and that although Plaintiff's "alleged symptoms generally reasonably relate to his medically diagnosed impairments . . . his allegations concerning the nature, extent, persistence, intensity and duration of his impairments . . . are not fully credible" (R. 25) *Gates v. Astrue*, 338 Fed. App. 46, 48 (2d. Cir. 2009) (citing *Aponte v. Sec'y of Health and Human Servs.*, 728 F. 2d 588, 591 (2d Cir. 1984)("[I]t is the function of the Secretary, not [the reviewing courts], to resolve evidentiary conflicts and appraise the credibility of witnesses, including the claimant.").

Substantial evidence in the record supports this finding. Specifically, the ALJ compared Plaintiff's subjective complaints of pain and chest discomfort on June 29, 2007, with Plaintiff's Stestamibi Stress and Rest Image Study on October 29, 2007, that showed normal results, and opined Plaintiff's subjective complaints failed to establish significant functional limitations. (R. 20). The ALJ further opined Plaintiff's chest X-ray on November 26, 2006, and stress echocardiogram on November 27, 2006, subsequent to complaints of left-sided chest pain on November 21, 2006, revealed no acute distress. *Id*. Substantial evidence in the record thus supports the ALJ's finding that Plaintiff's allegations concerning the nature, extent, persistence, intensity and duration of his impairments were not fully credible.

**F.     Suitable Alternative Employment in the National Economy**

The ALJ concluded Plaintiff was unable to perform his past relevant work as a lubrication technician, brake technician, fry cook, construction worker, automobile body technician, baker, baker's helper, and fast food worker. (R. 34). The Second Circuit requires that "all complaints . . . must be considered together in determining . . . work capacity." *DeLeon,* 734 F.2d at 937.  Once an ALJ  finds a plaintiff's impairments prevent a return to previous work, the burden shifts to the Commissioner to prove substantial gainful work exists and that the plaintiff is able to perform in light of her physical capabilities, age, education, experience, and training.  *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

It is improper to determine a claimant's residual work capacity based solely upon an evaluation of the severity of the claimant's individual complaints.  *Gold v. Secretary of Health and Human Services*, 463 F.2d 38, 42 (2d Cir. 1972).  To make such a

determination, the Commissioner must first show that the applicant's impairment or impairments are such that they permit certain basic work activities essential for other employment opportunities. *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities." *Id*. at 294.

An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work.[6] *Decker*, 647 F.2d at 294. In addition, the Commissioner must prove that the claimant's skills are transferrable to the new employment, if the claimant was employed in a "semi-skilled" or "skilled" job.[7] *Id*. at 294. This element is particularly important in determining the second prong of the test, whether suitable employment exists in the national economy. *Id.* at 296. Where applicable, the Act's Medical-Vocational guidelines may be used to meet the

---

[6] "Sedentary work" is defined as: "lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools....Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §404.1567(a).

[7] The regulations define three categories of work experience: "unskilled", "semi-skilled", and "skilled". *Decker, supra*, at 295.

"Un-skilled" is defined as: "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength....primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in thirty days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs."
20 C.F.R. §404.1568(a).

"Semi-skilled work" is defined as: "work which needs some skilled but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks."
20 C.F.R. §404.1568(b).

Secretary's burden of proof concerning the availability of alternative employment and supercede the requirement vocational expert testimony regarding specific jobs a claimant may be able to perform in the regional or national economy. *Heckler v. Campbell*, 461 U.S. 458, 462 (1983).

In this case, the ALJ found, considering Plaintiff's age, education, past relevant work, and residual functional capacity, Plaintiff was not disabled under Medical-Vocational Rules 201.27-201.29, Appendix 2, Subpt. P, 20 C.F.R., Part 404. Subpart P, 20 C.F.R. Part 404, and substantial evidence in the record supports this finding. In particular, Plaintiff testified he was able to walk for one half hour (R. 757), stand comfortably for one half hour (R. 760), experienced dizzy spells once each week (R. 762), and could work around the house for one to two hours without a break. (R. 766). Although Plaintiff's MRI on July 19, 2007 (R. 650), showed Plaintiff had degenerative fraying of the posterior medical meniscus, Dr. Smolinski opined Plaintiff undergo Visco injections as conservative treatment, and no other evidence in the record shows more invasive treatment was necessary. (R. 647). Substantial evidence thus supports the ALJ's finding Plaintiff retained the residual functional capacity to sit for two hours at a time and six hours total in an eight-hour workday with normal breaks; stand and walk for six hours total in an eight-hour workday with normal breaks; occasionally climb, balance, stoop, kneel, crouch, and crawl, but avoid repetitive operation of foot controls with the left lower extremity, and the ALJ's finding Plaintiff was capable of sedentary work and not disabled.

## **CONCLUSION**

Based on the foregoing, Defendant's motion (Doc. No. 8) should be GRANTED;

Plaintiff's motion (Doc. No. 10) should be DENIED, and the Clerk of the Court should be instructed to close the file in accordance with this Report and Recommendation.

Respectfully submitted,

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     September 8, 2010
               Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that the Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to the Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of the Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:      September  8, 2010
            Buffalo, New York